UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

          **Plaintiff,**

          v.                         Case No. 06-CR-291

**TYWHAUN WALKER, et. al.,**

          **Defendants.**

## RECOMMENDATION AND ORDER REGARDING THE DEFENDANT'S PRETRIAL MOTIONS

On November 7, 2006, the grand jury returned an indictment charging Larry J. Courtney ("Courtney") and Tywhaun L. Walker ("Walker") with distributing more than 50 grams of crack cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) and Title 18, United States Code, Section 2. On December 11, 2007, Walker filed a motion to suppress identification and derivative evidence wherein he requested an evidentiary hearing. (Docket No. 46.) At this time, Walker also filed various other pretrial motions. (Docket Nos. 47, 48, 49, 50, 51, 52.) On December 19, 2007, this court granted Walker's request for an evidentiary hearing, (Docket No. 55), and an evidentiary hearing was held before this court on January 11, 2008. A summary of the evidence adduced at the evidentiary hearing is set forth below. The government has responded to each of the defendant's other pretrial motions and indicated that each is moot. (Docket Nos. 58 (apparently improperly docketed as a response to Docket No. 46 but actually a response to Docket No. 48), 59, 60, 61, 62, 63.) Prior to the start of the evidentiary hearing, counsel for the defendant confirmed that these other motions are in fact moot and therefore the no further action of this court is required.

This case had been scheduled for jury trial on November 26, 2007. However, on November 16, 2007, Chief Judge Rudolph T. Randa granted Walker's motion to adjourn the trial and re-referred this case to this court for a second round of pre-trial motions. Chief Judge Randa has not yet scheduled a new trial date. The pleadings on the defendant's pretrial motions are closed and the matters are ready for resolution.

**EVIDENTIARY HEARING SUMMARY**

The government called two witnesses, FBI Special Agent Matthew Yaeger ("Yaeger") and Milwaukee Police Detective David Baker ("Baker"). The defendant testified on his own behalf. In lieu of post-hearing briefs, the parties proceeded with oral argument at the close of the evidence.

**FBI Special Agent Matthew Yaeger**

Yaeger testified that he became involved in an investigation of Larry Courtney ("Courtney") and acquired information regarding the alleged activities of Courtney from a confidential informant ("CI"). This CI was developed by another FBI agent and therefore Yaeger was not primarily responsible for the agency's contact with the CI. However, Yaeger did know that this CI was not "working off a case" but instead being compensated by the FBI for his cooperation with law enforcement. Although Yaeger does not know precisely how much the CI has been paid for his cooperation, Yaeger believes that over the course of his cooperation he has been paid several thousand dollars. Prior to the events in question, this CI had repeatedly proven reliable, had participated in twenty or more controlled purchases of controlled substances, and his information and cooperation has resulted in criminal charges and convictions of thirteen to fifteen persons.

On September 19, 2006, the CI participated in a controlled purchase of 2.25 grams of crack cocaine. This controlled purchase was audio recorded by a body wire worn by the CI and video taped by law enforcement officers conducting surveillance. During a consensually recorded telephone conversation, the CI set up the drug transaction with Courtney, and Courtney stated that

-2-
Case 2:06-cr-00291-RTR   Filed 01/14/08   Page 2 of 10   Document 67

he was going to be in his "old car." The CI knew Courtney to be referring to a green Lincoln with shiny rims.

Law enforcement set up surveillance at the predetermined meeting location and observed a green Lincoln. Yaeger, who had been following the CI to the meet location, proceeded past the meeting location after the CI turned into the location. However, before proceeding past the location, Yaeger did observe a green Lincoln at the location. Officers conducting the surveillance of the transaction obtained the license plate of the green Lincoln and subsequently learned that this vehicle was registered to Djuana Florez. The CI was observed being waved into the Lincoln, entering the Lincoln, and then exiting and getting back into his vehicle a very short time later. However, no officer conducting surveillance was able to observe the driver of the Lincoln.

Following the controlled buy, the CI and law enforcement met at a pre-determined meeting location. Law enforcement recovered 2.25 grams of crack cocaine from the CI, and the CI stated that it was not Courtney in the vehicle but an unknown "associate" of Courtney's whom the CI had met on prior occasions. Further, the CI stated that there was an infant child in the back seat of the Lincoln.

Yaeger did not conduct much investigation into Djuana Florez but perhaps may have conducted a public records search. Yaeger testified the reason for his lack of investigation was that at this time he was very involved in another large investigation.

On October 5, 2006, Yaeger was contacted by the CI who relayed to Yaeger information that the person who had been in the Lincoln with the CI was going to be at Courtney's house on the northwest side of Milwaukee cooking powder cocaine into crack cocaine. Yaeger called upon detectives with whom he had recently been working to assist in the surveillance of Courtney's residence. At about 3:10 PM, Yaeger, who was driving an undercover vehicle, observed the green Lincoln at Courtney's residence. Yaeger set up surveillance about a block away so that he was able

to see the Lincoln leave the driveway. However, Yaeger was not able to see when a person got in or out of the Lincoln. At about 3:32 PM, the Lincoln left the residence. Yaeger attempted to follow the vehicle but lost sight of it because Yaeger was unable to turn around quickly enough.

At 3:49 PM, Yaeger observed that the Lincoln had returned to Courtney's driveway. Yaeger again set up surveillance and at 4:14 PM observed the Lincoln again leave the driveway. In light of the fact that Yaeger received information from a CI whom he had previously found to be reliable that Courtney was cooking powder cocaine to crack cocaine and the fact that the Lincoln had just left the residence and quickly returned, based upon his training and experience, Yaeger believed that the green Lincoln might be making drug deliveries.

Yaeger continued to follow the Lincoln, and he contacted Baker. Yaeger relayed his concerns to Baker that the Lincoln may be making drug deliveries, and Yaeger requested that Baker stop the Lincoln in an effort to identify the driver of the vehicle. When Baker notified Yaeger that he had the car in sight, Yaeger turned off. Yaeger did not observe the vehicle violate any traffic laws. Yaeger did not participate in or observe the traffic stop, but he later learned from Detective Baker that the driver was identified as the defendant. Yaeger then conducted a photo lineup with the CI, and the CI identified the defendant as the person from whom he purchased the 2.25 grams of crack cocaine on September 19, 2006. Yaeger does not believe that he had heard Walker's name come up in connection with this investigation prior to Walker being identified as the driver of the green Lincoln.

**Milwaukee Police Detective David Baker**

Baker testified that he assisted Yaeger in surveillance of the controlled buy on September 19, 2006 but was in a location where he was able to observe only the CI meet with the green Lincoln and was not able to observe any specifics about this meeting such as anything about the driver of the Lincoln.

On October 5, 2006, Baker was contacted by Yaeger and asked to assist in identifying the driver of the green Lincoln. Baker and his partner parked their unmarked squad car in a parking lot of a gas station on the southeast corner of Fond du Lac Avenue and Mill Road. At about 4:15 PM, Baker was contacted by Yaeger and notified that the Lincoln was traveling west on Mill Road. While still sitting in the gas station parking lot, Baker observed the green Lincoln fail to stop for a red light at the corner of Fond du Lac Avenue and Mill Road. Baker left his location and followed the green Lincoln as it made a turn to go north on 91st Street from Mill Road. Baker activated the vehicle's red bubble light, commonly referred to as a "Kojak light" in the Milwaukee Police Department, and the green Lincoln pulled to the side and stopped. Baker made contact with the driver who identified himself as the defendant. However, the driver did not have any identification. After stopping the vehicle, Baker learned that Walker did not have a valid driver's license and was not wearing his seat belt, both of which are violations of state law.

Baker elected not to issue any citations because if he had done so, he would have been required to arrest Walker for failing to have a valid license. Baker felt that any arrest would have run the risk of compromising the ongoing investigation and therefore issued a verbal warning to Walker and told Walker not to drive the vehicle but instead to leave his car parked on the side of the street and make other arrangements to retrieve the vehicle. Baker then reported the facts of the traffic stop and the driver's identity to Yaeger.

**Tywhaun Walker**

Walker testified that he was at Courtney's residence when he left in his green Lincoln to return home, which is in the area of 76th Street and Brown Deer Road. He had purchased the green Lincoln from Courtney in the summer of 2006. As Walker drove east through the intersection of Fond du Lac Avenue and Mill Road, he was on his cell phone talking with his girlfriend, Djuana Florez, telling her that he was on his way home. As he drove through this intersection he also

observed a blue Chevrolet police-style vehicle on his left side waiting to make a left turn from Fond du Lac Avenue to travel east on Mill Road. Walker further testified that the light was green when he passed through the intersection and that he was not speeding.

Walker again noticed this blue Chevrolet behind him as he waited to turn left to go north onto 91st Street, but there was one car between him and the Chevrolet. As he traveled north on 91st Street, the Chevrolet activated its red light and Walker pulled over. He was contacted by Baker who told Walker to hang up the cell phone and then Baker informed Walker that he was stopped for "excessive speed through an intersection." Walker did not have any identification with him but verbally identified himself. During this stop, Baker and his partner looked through the car, including the trunk. Additionally, Walker saw that the officers had a picture of Courtney with them and Walker saw the officers look at the picture and then at him as if they were comparing him to the picture. Walker was not issued any citations and his probation officer was not contacted regarding this incident. Although Walker was told not to drive from the scene, Walker waited for the officers to leave the area and then returned to the car and drove home. Walker did not think further about the incident until he was arrested about a month later and learned through discovery of the incident's connection to the present case.

**ANALYSIS**

Failure to stop for a red traffic light is a violation of Wisconsin law, see Wis. Stat. §§ 346.37(1)(c), 346.43(1)(b), and therefore, if probable cause existed for Baker to believe that Walker violated this law, Baker was entitled to stop Walker, see Whren v. United States, 517 U.S. 806, 810 (1996). The fact that Baker had an ulterior motive in conducting the traffic stop, i.e. learning the identity of the driver of the green Lincoln, is irrelevant to the question of whether the traffic stop was permissible. See United States v. Bass, 325 F.3d 847, 850 (7th Cir. 2003) (quoting

Whren, 517 U.S. at 813). Thus, the court turns to the disputed factual question of whether there was probable cause to believe that Walker ran a red light.

The court finds that the evidence adduced at the evidentiary hearing indicates that Walker failed to stop for a red light at the intersection of Fond du Lac Avenue and Mill Road, and thus it is the conclusion of this court that probable cause existed to stop the vehicle Walker was operating. The court finds Baker's testimony to be more credible than that of Walker. Baker was paying particular attention to the green Lincoln and given that Baker was seeking to stop the vehicle, no doubt he was specifically cognizant of the vehicle's compliance with traffic laws. This is quite contrary to Walker who testified that he was talking on his cell phone and paying attention to a blue Chevrolet as he drove through the intersection. Parenthetically, studies have frequently reported that persons talking on cell phones are less attentive than an ordinary driver. See, e.g., Robert Roy Britt, Live Science, *Drivers on Cell Phones Kill Thousands, Snarl Traffic*, February 1, 2005 available at http://www.livescience.com/technology/050201_cell_danger.html; David L. Strayer, Frank A. Drews, & Dennis J. Crouch, *Fatal Distraction? A Comparison of the Cell-Phone Driver and the Drunk Driver*, available at http://www.psych.utah.edu/AppliedCognitionLab/ DrivingAssessment2003.pdf. In any event, based on the testimony, it is reasonable to conclude Walker may have simply failed to notice the red light. This conclusion that Walker was not paying attention to the color of the traffic signal is further supported by Walker's repeated testimony that as he passed through the intersection, his attention was directed towards a blue Chevrolet.

In addition, the court finds Walker's recall of events suspect in light of the fact that from Walker's perspective, this event was a comparatively minor occurrence without significant consequence. He was not issued a citation and his probation officer was not notified. Thus, the court finds it unlikely that a person would possess significant recall as to the details of the incident more than a month later when the significance of the event is finally realized. The fact that Walker's

recollection may be inaccurate is supported by Walker's version of where the unmarked police car was located when he first observed it, which is inconsistent with the testimony of Baker. Baker testified that he was parked a gas station parking lot on the southeast corner of the intersection whereas Walker placed the car at essentially the opposite corner of the intersection, in the left turn lane of Fond du Lac waiting to turn east onto Mill Road. The court finds that it is unlikely for Baker to misrecollect the location where he spent substantial time waiting to be notified by Yaeger that the green Lincoln was moving again. Also, not knowing Walker's destination, it would be unlikely that Baker would be in the left lane on Fond du Lac Avenue planning to go east on Mill Road before Walker went through the intersection. Thus, the court finds that the inconsistency between the testimony of Baker and Walker is simply indicative of Walker's faded memory of the details of this incident.

Therefore, because the court finds that there was probable cause to believe that Walker failed to stop for a red light, Baker was permitted to stop Walker and ascertain his identity. Therefore, the court shall recommend that Walker's motion to suppress be denied.

Alternatively, the court finds that Baker was permitted to stop the vehicle Walker was operating based upon reasonable suspicion that it was transporting controlled substances. "[I]t is well-established that a law enforcement officer may 'stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause [to arrest.]" United States v. Sholola, 124 F.3d 803, 812 (7th Cir. 1997) (quoting United States v. Sokolow, 490 U.S. 1 (1989)); see also Terry v. Ohio, 392 U.S. 1 (1968). Reasonable suspicion is a quantum of proof that is less than probable cause but more than a mere hunch. United States v. Arvizu, 534 U.S. 266, 274 (2002); United States v. Ienco, 182 F.3d 517, 523 (7th Cir. 1999) (citing United States v. Tipton, 3 F.3d 1119, 1122 (7th Cir. 1993); United States v. Quinn, 83 F.3d 917, 921 (7th Cir. 1996)). "In

determining whether a particular police-citizen encounter was supported by reasonable suspicion, courts must consider the totality of circumstances known to the officer at the time of the stop." Quinn, 83 F.3d at 921 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981); see also Arvizu, 534 U.S. at 273. The totality of the circumstances includes "the experience of the law enforcement agent and the behavior and characteristics of the suspect." United States v. Swift, 220 F.3d 502, 506 (7th Cir. 2000) (quoting United States v. Odum, 72 F.3d 1279, 1284 (7th Cir. 1995)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Arvizu, 534 U.S. at 273 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)). An officer conducting a proper Terry stop is entitled to conduct a limited pat down of a suspect's outer clothing in order to determine if the suspect is armed with a weapon. Terry, 392 U.S. at 24-25.

    Based upon the totality of the circumstances, the court finds that there was reasonable suspicion to believe that the green Lincoln was involved in the transportation of controlled substances at the time it was stopped. Based upon the September 19, 2006 controlled buy, the investigating officers knew that the green Lincoln and its operator were involved in the delivery of the controlled substances. It was precisely for this reason that they sought to ascertain the driver's identity. Further, the green Lincoln previously left Courtney's residence and had returned a short time later, conduct that Yaeger recognized based upon his training and experience to be consistent with an individual making drug deliveries when viewed in conjunction with the fact that Yaeger learned from a CI who had repeatedly proven reliable in the past that Courtney was processing crack cocaine in his residence during the time the green Lincoln left the residence. Thus, when the vehicle quickly left the residence again, it was reasonable to infer that the operator may be making a delivery of controlled substances rather than simply going home or undertaking some other

innocent act. Therefore, the court finds that the fact that the investigating law enforcement officers had reasonable suspicion to believe that the green Lincoln may be transporting controlled substances, Baker was permitted to conduct a brief investigative stop of the vehicle.

Finally, the government argued during oral argument at the evidentiary hearing that suppression is additionally inappropriate because Walker's identity would have been inevitably discovered, for example, by investigating whether the car's registered owner, Walker's girlfriend Djuana Florez, allowed anyone else to use her vehicle and then presenting this person or persons to the CI in a lineup. Because the court finds that there was probable cause to stop Walker for failing to stop for a red light and reasonable suspicion existed that he was involved transporting controlled substances, the court need not consider this final argument of the government.

**IT IS THEREFORE RECOMMENDED** that Walker's motion to suppress, (Docket No. 46), be **denied**.

**IT IS FURTHER ORDERED** that Walker's other pretrial motions, (Docket Nos. 47, 48, 49, 50, 51, 52), are **denied as moot**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this <u>14th</u> day of January, 2008.

<u>s/AARON E. GOODSTEIN</u>
U.S. Magistrate Judge